#29824-SRJ
**2023 S.D. 18**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE DISCIPLINE OF
RONALD R. FRAUENSHUH,
AS AN ATTORNEY AT LAW.

* * * *

ORIGINAL PROCEEDING

* * * *

THOMAS H. FRIEBERG
ROBERT B. FRIEBERG of
State Bar of South Dakota
Beresford, South Dakota                    Attorneys for Disciplinary
                                           Board.


JAMES E. MOORE of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota                  Attorneys for respondent.


* * * *

                                           ARGUED
                                           JANUARY 10, 2023
                                           OPINION FILED **04/12/23**

JENSEN, Chief Justice

[¶1.] This is an attorney disciplinary proceeding against Ronald R. Frauenshuh, a member of the State Bar of South Dakota. The Disciplinary Board of the State Bar of South Dakota investigated a complaint of unprofessional conduct against Frauenshuh, determined he had violated the Rules of Professional Conduct, and recommended a three-month suspension from the practice of law. Following a contested hearing, the Referee appointed by this Court found that Frauenshuh violated the Rules of Professional Conduct and recommended a three-month suspension. After considering the recommendations and the record, we impose a thirty-day suspension.

## General Background

[¶2.] Frauenshuh graduated from Washburn University School of Law in Kansas. He then moved to Minnesota, where he practiced law for over thirty years. During this time, he experienced several serious health conditions. He was diagnosed with Post-Traumatic Stress Disorder (PTSD) as a result of a 1984 burn accident, and he suffered and recovered from a debilitating stroke in 2011. Frauenshuh was first admitted to the South Dakota Bar in 2015. He had offices in Ortonville, Minnesota, and Watertown, South Dakota, but only his Watertown office remains open at this time. For most of his career, Frauenshuh has been a solo practitioner. His practice currently focuses primarily on probate, criminal defense, and mediation. He is an experienced trial attorney, having tried more than 100 jury trials.

[¶3.]    Frauenshuh has previously been subject to disciplinary proceedings in Minnesota, including the following:

> (1) November 1990 admonition for failing to return a client's phone calls;
>
> (2) April 1996 admonition for leaving a courtroom although the judge had ordered him to stay;
>
> (3) April 1996 admonition for failing to advise his client in a divorce action that opposing counsel had represented Frauenshuh in his own divorce;
>
> (4) May 1996 admonition for using information about a former client to the client's disadvantage;
>
> (5) May 1996 admonition for a disorderly conduct conviction in Grant County, South Dakota, relating to an incident where he was trying to exercise visitation with his son; and
>
> (6) 2001 public reprimand for entering into an unfair business transaction with a client without adequate disclosure, making negligent misrepresentations to the Minnesota Director of the Office of Professional Responsibility, and altering a notarized document through the actions of his paralegal.

[¶4.]    Frauenshuh was privately retained in 2019 to represent K.L. on charges of sexual contact with a child under sixteen and attempted sexual contact with a child under sixteen filed in Lincoln County. Lincoln County Deputy State's Attorney William Golden was the lead prosecutor on the charges against K.L. The case proceeded to jury trial on October 27, 2020. Before the trial concluded, the circuit court granted Golden's motion for a mistrial after finding that Frauenshuh had repeatedly violated several court orders and evidentiary rulings. A second trial began on March 8, 2021. During Frauenshuh's opening statement, the court again found that he violated the court's prior evidentiary ruling. The jury returned a verdict of not guilty on both counts, and the court entered a judgment of acquittal

for K.L. On March 26, 2021, Golden filed a complaint against Frauenshuh with the Board.

### Disciplinary Board

[¶5.]     Golden's complaint alleged that Frauenshuh repeatedly violated the Rules of Professional Conduct in the criminal proceedings, leading to a mistrial, and that in the second trial he engaged in the same prejudicial conduct during opening statements. Golden stated that he elected not to move for mistrial in the second trial because of the harmful effect of the first mistrial on the victim and her family. Golden reported that Frauenshuh claimed not to understand or to have done what led to the State's objections and concluded that "either Mr. Frauenshuh did not understand the [c]ourt's orders, or he did understand and intentionally violated the [c]ourt's order." Golden included the circuit court's orders and the transcripts of the trials with his complaint letter.

[¶6.]     The Board began its investigation after receiving Golden's complaint. The Board received an initial response from Frauenshuh denying incompetence or any intention to violate orders in the criminal proceedings, an additional response from Golden, and a second response from Frauenshuh. After receiving the written submissions, the Board directed Frauenshuh to appear to provide sworn testimony. Frauenshuh elected to appear pro se before the Board.

[¶7.]     Following its investigation, the Board initiated a formal accusation against Frauenshuh pursuant to SDCL 16-19-67 by filing findings of fact, conclusions of law, and a recommendation for a three-month suspension with the Supreme Court. The Board entered findings as follows:

10.  Prior to [K.L.'s first] trial, multiple hearings were held to determine, among other things, whether and to what extent the Defendant could have an expert witness testify about the ability of someone who is sleeping to form the specific intent to commit a crime.

11.  After hearing arguments, the Court (The Honorable Rachel Rasmussen) stated in open court that "whether or not the defendant was asleep or awake is a fact at issue.  I will differentiate that fact from whether or not the defendant had the intent to commit any action.  An expert witness cannot testify to the ultimate issue of guilt or innocence, and telling the jury specifically that a defendant did or did not have the requisite intent to commit a crime is the equivalent of telling the jury whether the defendant is guilty or not guilty." [Frauenshuh] asked for a written order on what his expert could not testify to so he didn't testify to an issue prohibited by the court.  As a result, the Court entered an order which provided the following:

> Dr. Elliot Atkins, Ed.D., P.A., is hereby declared as an expert.  Dr. Atkins cannot testify to the issue of guilt or innocence, or testify as to whether the Defendant did or did not commit this crime, or whether the Defendant did or did not have the specific intent to commit this crime.

12.  On October 27, 2020, a jury trial commenced before Judge Rasmussen.

13.  During the trial, [Frauenshuh] violated the Court's pretrial orders which resulted in curative instructions being given to the jury on at least three occasions.

14.  During the trial, witnesses [Frauenshuh] planned to call on behalf of the Defendant were present in the courtroom in violation of the Court's sequestration order.

15.  When [Frauenshuh] called Dr. Elliot Atkins as a witness on day three of the trial, he asked the witness the following:

> Have you had the opportunity to review South Dakota law regarding the intent to arouse or gratify for sexual desire?

> Yes.

And as you have looked at that issue in this case, tell me what factors you were looking to diagnose or to determine if the defendant was capable of the intent to arouse or gratify for sexual desire.

16. An objection was raised by the State, which was sustained.

17. The question asked of Dr. Atkins was in direct violation of the Court's order regarding the scope of Dr. Atkins' testimony.

18. In two separate conferences with the Court and counsel outside the courtroom, [Frauenshuh] left his microphone on resulting in the jury being able to hear part of the discussions.

19. The State moved for and was granted a mistrial based upon the questioning of Dr. Atkins as well as the cumulative conduct of [Frauenshuh] throughout the trial.

20. The Court entered an Order for Mistrial detailing the conduct of [Frauenshuh] which caused the Mistrial.

21. [Frauenshuh] was advised that the Court would either hold [Frauenshuh] in contempt of court or impose sanctions based upon his conduct.

22. Judge Rasmussen did not hold a separate hearing nor impose sanctions or an order of contempt upon [Frauenshuh].

23. After the mistrial and before the second trial, [Frauenshuh] did not seek clarification from the Court as to what he could or could not ask of his expert witness.

24. A second jury trial was held in March, 2021 which resulted in an acquittal of the Defendant.

25. At the second trial, the State objected to statements made in voir dire by [Frauenshuh] in violation of the Court's orders related to the issue of what he anticipated his expert would testify in regard to intent.

26. [Frauenshuh] felt that the lack of sanctions from Judge Rasmussen meant that she may have changed her mind and that he was not violating the Court's order by referencing such anticipated testimony.

27. The State's objection regarding the remarks in voir dire was sustained. [Frauenshuh] was again admonished for delving into an area prohibited by the Court's earlier ruling.

28. In his hearing before the Board, [Frauenshuh] still felt that the line of questioning which resulted in the mistrial was appropriate, despite the Court's order.

29. The Board finds that [Frauenshuh] intentionally disobeyed the Court's order in pursuing a line of questioning that he was clearly prohibited from doing under the Court's order.

30. [Frauenshuh's] testimony before the Board is not credible as it relates to accepting responsibility for his misconduct as noted in part by his pointing out the State's Attorney and Judge Rasmussen were originally incorrect in their conclusion that the offense charged was a general intent crime.

[¶8.] Based upon its findings, the Board entered conclusions determining that Frauenshuh violated Rules 3.4(c) and (e), 3.5(a) and (d), and 8.4(a) and (d):

2. [Frauenshuh's] actions reflect a lack of understanding of his obligations under the Rules of Professional Conduct.

3. [Frauenshuh's] history of disciplinary actions in Minnesota indicate a lack of understanding of his obligations under the Rules of Professional Conduct and his duty to respect the decorum of the tribunal.
. . .

5. [Frauenshuh's] intentional disregard of a court order constitutes grounds for discipline under the South Dakota Rules of Professional Conduct.

[¶9.] Frauenshuh filed a response to this Court through counsel disputing some of the Board's findings and conclusions and objecting to the Board's recommendation for a three-month suspension. Frauenshuh requested further proceedings before this Court, pursuant to SDCL 16-19-67.

[¶10.] In his response, Frauenshuh disputed the relevance of his disciplinary history in Minnesota, arguing there were no instances of misconduct alleged for

over twenty years and the prior conduct was mostly dissimilar to the conduct alleged in this case. He admitted that the circuit court gave curative instructions three times, after finding Frauenshuh had violated the pretrial order. He also admitted that the circuit court determined that his question to the expert violated the order, but he denied any intent to violate the court's order. Frauenshuh claimed he accidentally left his microphone on and that this unintentional conduct contributed to the court's decision to grant the mistrial. Finally, Frauenshuh asserted that the Board's findings improperly conflated his defense that the conduct was unintentional with a failure to accept responsibility for his conduct. He claimed he tried the case a second time with no expense to his client as evidence of taking responsibility.

[¶11.]       Frauenshuh also argued that the Board's recommendation for a three-month suspension "is an exceptionally severe sanction . . . not consistent with this Court's published disciplinary decisions." He asserted that, given his age, the suspension would effectively end his legal career. He further contended that the recommendation was improperly based in part on conduct from decades ago that was unrelated to his conduct during the trial. Finally, he argued that the circuit court's decision not to pursue contempt proceedings or impose sanctions in the criminal proceedings supported his claim that his conduct was not as egregious as found by the Board.

[¶12.]       This Court appointed retired Circuit Court Judge Kathleen F. Trandahl, as Referee, to take testimony on the disputed issues and enter findings, conclusions, and a recommendation to the Court. Judge Rasmussen, Golden, and

Frauenshuh testified at the hearing before the Referee. Thomas Frieberg and Robert Frieberg appeared on behalf of the Board, and James Moore represented Frauenshuh.

[¶13.]     Golden testified that he and the other prosecutor had concerns early on about Frauenshuh's reluctance to follow the circuit court's order forbidding the expert from testifying about the ultimate issue, which materialized when the first trial ended in a mistrial. Judge Rasmussen testified that her "frustration evolved because of the way the case had started. It went from wondering if [Frauenshuh] wasn't understanding the order to just not caring that the order was in place and he was going to do it anyway. So by the end of the first trial it made that evolution." She said that what led her to believe he would not follow the order was his "conduct during trial. There were multiple objectionable comments made, many of which the State did object to. We had multiple bench conferences. We had conferences in the hallway and I did my absolute best to make it very clear not only for that order, but for other parameters of the trial what was and was not appropriate." Judge Rasmussen acknowledged that she did not make a finding on the record that Frauenshuh's violations of her orders were knowing or intentional. Judge Rasmussen explained some of the reasons she did not impose sanctions or hold Frauenshuh in contempt, including not wanting to make the proceedings more complex given the intermediate appeal Frauenshuh sought following the mistrial, showing compassion in light of an illness in his family, and avoiding prolonging the proceedings for the alleged minor victim.

[¶14.]    Frauenshuh testified that he respected Judge Rasmussen and that it was his demanding client who frequently disagreed with her rulings. He testified that he was surprised by the objections to his questions during voir dire. Frauenshuh explained that the violation of the witness sequestration order was because he had been expecting the witnesses to arrive on a different day. Regarding his examination of his expert witness, he claimed he meant to ask Dr. Atkins to list factors he would consider rather than to testify to the ultimate issue of specific intent as prohibited by the court order. He denied intending to violate the order and called his question "sloppy" and "poor." Frauenshuh maintained that leaving the microphone on was a result of his limited experience with microphones. Absent this mistake, he did not believe a mistrial would have been granted. Frauenshuh contended that he hesitated and realized his own mistake in his phrasing during opening statements in the second trial. He concluded his testimony with an apology and expression of embarrassment.

[¶15.]    The Referee received post-hearing briefs from counsel and prepared findings of fact, conclusions of law, and a recommendation to be filed with the Court. Frauenshuh objected to the Referee's findings and presented additional proposed findings of fact. The Referee found the Board's findings following its investigation to be "wholly appropriate" and expanded upon them. She found that Frauenshuh violated Judge Rasmussen's instruction, given during a pretrial motions hearing, that "no jury nullification questions" were allowed. He made remarks about politicians not compromising well, and Judge Rasmussen admonished the prospective jurors to "disregard the political comments."

Frauenshuh then asked about innocent people being imprisoned and imagining that had happened to them, prompting bench conferences and further curative instructions. The Referee also found Frauenshuh was not credible when he testified that he misunderstood the court's order, whereas she found the testimony of Judge Rasmussen and Golden credible. The Referee found that the dispute early in the criminal case about whether the requisite intent was general or specific, though resolved, led to Frauenshuh's ongoing "contentious" conduct and that there were multiple hearings regarding the expert witness and whether and to what extent he could testify about a sleeping person's ability to form specific intent.

[¶16.]     The Referee found that Frauenshuh's testimony that he "fully intended to follow the Judge's order" was not credible, nor was his "contention that he didn't *intentionally* violate the court's order . . . supported by the record." Moreover, the Referee specifically found that Frauenshuh's violations of the court's pretrial rulings were intentional. The Referee additionally found:

> 56. Frauenshuh has also failed to accept any responsibility for the multiple other violations of the Court's orders throughout the first jury trial. His behavior was the sole cause for the numerous curative instructions that had to be given to the jury by the Court and the eventual mistrial. There is no credible acknowledgement, let [alone] remorse, for his multiple violations of the court's orders that prejudiced the State in their attempts to provide a fair trial to both the alleged victim and the defendant. There is no credible acknowledgement, let alone remorse, for the harm done to the alleged child victim and her family, and his own client, due to the delay in getting their case resolved. There is no credible acknowledgement, let alone remorse, for how his repeated misconduct tarnished the legal profession in the eyes of the jurors, the witnesses, the parties and the public because of his knowing and intentional misconduct.

57. In the second jury trial, Frauenshuh again violated the Court's Pretrial Daubert Order when referencing his expert witness in his opening statement to the jury. Yet again, he has failed to acknowledge this misconduct, let alone show remorse for violating the Court's Pretrial Daubert Order.

. . .

60. While Frauenshuh testified that he was embarrassed for being in this position, it appears he was only embarrassed that his performance before the Disciplinary Board fell short of persuading them that his conduct was in line with the Rules of Professional Conduct. After all, his client was found "not guilty" of both criminal charges after the second jury trial, and he noted with pride that he didn't charge his client for the time spent on the second trial.

The Referee also found that Frauenshuh's prior disciplinary history included "Frauenshuh intentionally disobeying a judge's order. This direct disregard for the [c]ourt's authority shows that Frauenshuh is not [averse] to violating the [c]ourt's orders."

[¶17.]     The Referee concluded there was clear and convincing evidence to support each of the Board's determinations that Frauenshuh violated the Rules of Professional Conduct, excepting 3.5(a), which in her view did not apply.[1]

### Standard of Review

[¶18.]     "The Disciplinary Board and the Referee conducted detailed hearings in this matter. Each made findings, conclusions, and recommendations regarding the appropriate discipline . . . ." *In re Discipline of Eicher*, 2003 S.D. 40, ¶ 23, 661

---

1.     The Board found that Frauenshuh violated Rule 3.5(a), prohibiting a lawyer from "[s]eek[ing] to influence a judge, juror, prospective juror or other official by means prohibited by law[.]" The Referee found no violation of this subsection and determined that subsection (a) was not implicated by Frauenshuh's conduct. We agree with the Referee's conclusion that Frauenshuh did not violate Rule 3.5(a).

N.W.2d 354, 362. "This Court gives careful consideration to their findings because they had the advantage of seeing and hearing [the witness(es)]." *Id.* "We will not disturb the [R]eferee's findings when they are supported by the evidence." *In re Discipline of Mines*, 2000 S.D. 89, ¶ 14, 612 N.W.2d 619, 626. "This Court, however, gives no particular deference to the Referee's recommended sanction." *In re Discipline of Eicher*, 2003 S.D. 40, ¶ 23, 661 N.W.2d at 362. "The final determination for the appropriate discipline of a member of the State Bar rests firmly with the wisdom of this Court." *Id.* ¶ 23, 661 N.W.2d at 363 (quoting *In re Discipline of Wehde*, 517 N.W.2d 132, 133 (S.D. 1994)).

## Analysis

[¶19.] "The purpose of the attorney disciplinary process is not to punish the attorney." *In re Discipline of Swier*, 2020 S.D. 7, ¶ 57, 939 N.W.2d 855, 868. "Two of its goals are: '1) the protection of the public from further fraudulent, unethical or incompetent activities involving this attorney; and 2) the preservation of the image and integrity of the attorneys, the bar association and the legal profession as a whole.'" *Id.* (quoting *In re Discipline of Simpson*, 467 N.W.2d 921, 921–22 (S.D. 1991)). "A third goal is to deter like conduct by other attorneys." *Id.* "The real and vital issue to be determined is whether or not the accused, from the whole evidence as submitted, is a fit and proper person to be permitted to continue in the practice of law." *Id.* (quoting *In re Discipline of Simpson*, 467 N.W.2d at 922).

[¶20.] "The South Dakota Constitution places with this Court the affirmative duty to 'govern terms of courts, admission to the bar, and discipline of members of the bar.'" *Id.* ¶ 59, 939 N.W.2d at 868 (quoting S.D. Const. art. V, § 12). "We take

this obligation most seriously." *Id.* (quoting *In re Discipline of Reynolds*, 2009 S.D. 9, ¶ 49, 762 N.W.2d 341, 352).

[¶21.]    The Board and the Referee determined Frauenshuh violated Rule 3.4, Rule 3.5, and Rule 8.4 of the Rules of Professional Conduct:

> Rule 3.4 Fairness to Opposing Party and Counsel
>
> A lawyer shall not:
> . . .
> (c) Knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists;
> . . .
> (e) In trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused[.]
>
> Rule 3.5 Impartiality and Decorum of the Tribunal
>
> A lawyer shall not:
> . . .
> (d) Engage in conduct intended to disrupt the tribunal.
>
> Rule 8.4 Misconduct
>
> It is professional misconduct for a lawyer to:
>
> (a) Violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> . . .
> (d) Engage in conduct that is prejudicial to the administration of justice[.]

[¶22.]    In his written submissions and testimony before the Referee, Frauenshuh did not dispute that he violated the circuit court orders during the criminal proceedings but maintained that he did not do so knowingly or

intentionally as required by Rules 3.4(c) and 3.5(d). Claiming that his violations of the court orders were unintentional, Frauenshuh also argued that he did not violate Rules 8.4(a) or (d). During the hearing before this Court, Frauenshuh, through counsel, seemed to acknowledge that he violated Rule 3.4(c) but argued his conduct did not involve the other Rules the Board and the Referee found were violated. Contrary to Frauenshuh's assertions, we conclude that the Board and the Referee properly determined that Frauenshuh's conduct in the criminal proceedings violated Rules 3.4(c) and (e), 3.5(d), and 8.4(a) and (d).

[¶23.] Frauenshuh highlights that the circuit court, in granting a mistrial, made no findings that he knowingly or intentionally violated the court's orders. He argues that the circuit court's decision not to proceed with sanctions or contempt proceedings supports his claim that he did not intentionally violate the Rules of Professional Conduct.[2] The absence of any findings concerning Frauenshuh's intent

---

2. At oral argument, Frauenshuh's counsel argued that Judge Rasmussen's decision not to impose sanctions deprived Frauenshuh of the benefit of a mitigating factor recognized by the ABA. ABA Standard 9 includes, as mitigating factors, "absence of prior disciplinary record, absence of dishonest or selfish motive; personal or emotional problems; timely good faith effort to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; *imposition of other penalties or sanctions*; remorse; and remoteness of prior offenses." Rule 10, ABA Model Rules for Lawyer Disciplinary Enforcement (July 20, 2020), https://www.americanbar.org/groups/professional_responsibility/ resources/lawyer_ethics_regulation/model_rules_for_lawyer_disciplinary_ enforcement/rule_10/ (emphasis added) (explaining the standards for sanctions the ABA adopted in 1986). Standard 9 includes, as aggravating factors, "prior disciplinary offenses; dishonest or selfish motive; a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary

(continued . . .)

in the circuit court's order for mistrial has little bearing on our determination whether he engaged in unprofessional conduct as the purpose of the mistrial order is different from the purpose of attorney disciplinary proceedings. While Judge Rasmussen did not determine in the criminal proceedings that Frauenshuh's violations of her orders were knowing or intentional, she testified before the Referee that she reached that conclusion based upon Frauenshuh's conduct during the trial. Judge Rasmussen also explained her reasons for not proceeding with sanctions.

[¶24.]     The Board's and Referee's findings that Frauenshuh knowingly violated the court orders are well supported in this record. Similarly, there is ample evidence to support the determination that Frauenshuh alluded to "any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence[.]"[3] Frauenshuh is an experienced attorney and has tried more

---

(. . . continued)

proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; submission of false evidence, false statements or other deceptive practices during disciplinary process; refusal to acknowledge wrongful nature of conduct; vulnerability of victim; substantial experience in the practice of law; and indifference to making restitution." *Id.* While this Court has not expressly adopted the ABA factors for mitigation and aggravation in attorney discipline cases, we have thoroughly considered the context and nature of Frauenshuh's current and prior violations consistent with our decisional law in imposing a thirty-day suspension.

3.     Although not addressed in the Board's or Referee's findings, Judge Rasmussen admonished Frauenshuh during the trial for making reference to mental health counseling for the alleged victim, stating "[i]t is not borderline, Mr. Frauenshuh. I already ordered there can be no reference to psychological records, counseling records, or any type of mental health issues. It's not borderline. It's over the line. You cannot bring up counseling or mental health. Do you understand?"

than 100 jury trials. Yet he repeatedly violated the court's orders throughout the first trial and again during his opening statement at the start of the second trial.

[¶25.] During voir dire in the first trial, Frauenshuh broached multiple forbidden topics, drawing back-to-back sustained objections. Then, during the trial, he attempted to ask about the timeline for the alleged victim's school counseling despite an order forbidding the parties from addressing counseling or mental health at all. He also asked his expert witness a legal question bearing on the defendant's intent in the case even though there were numerous pretrial hearings and bench conferences during which the court clarified that he could not ask such questions. Even if Frauenshuh was truthful when he explained that leaving his microphone on and failing to sequester witnesses were honest mistakes, there were multiple other violations of the court's orders—after Frauenshuh admitted they were clear and after he was admonished by the circuit court. These belie Frauenshuh's claims that he did not knowingly disobey the circuit court orders.

[¶26.] Frauenshuh's conduct during the criminal proceedings also supports the Referee's determination that he "[e]ngage[d] in conduct intended to disrupt the tribunal" under Rule 3.5(d). The findings that Frauenshuh had knowingly violated the court's order, the repetitive nature of the violations, the fact that he was warned that the court would declare a mistrial if additional violations occurred, the jury nullification questions, and the first trial ending in a mistrial all support the determination by the Referee that Frauenshuh intentionally engaged in conduct designed to disrupt the criminal proceedings.

[¶27.]     Finally, we conclude that Frauenshuh engaged in misconduct under Rule 8.4(a) by violating Rules 3.4(c) and 3.5(d) and engaged in "conduct that [was] prejudicial to the administration of justice" under Rule 8.4(d) during the course of the criminal proceedings. His willful refusal to comply with clear orders and directives of the court are in and of themselves prejudicial to the administration of justice. Frauenshuh's behavior in both trials also impacted the ability of the State and the victim to receive a fair trial. Additionally, the mistrial and the effect of Frauenshuh's actions delayed resolution for the parties and gave the dismissed jurors a poor impression of attorneys, undermining their confidence in the justice system.

## Appropriate Discipline

[¶28.]     SDCL 16-19-35 authorizes the following discipline for misconduct:

> (1) Disbarment by the Supreme Court;
> (2) Suspension by the Supreme Court for a specific period not to exceed three years;
> (3) Placement on a probationary status by the Supreme Court for such period and with such conditions as the Supreme Court may specify;
> (4) Public censure by the Supreme Court; and
> (5) Private reprimand by the board.

"The appropriate discipline in a particular case is determined by considering the seriousness of the misconduct and the likelihood that it or similar misconduct will be repeated. We also consider the prior record of the attorney." *In re Discipline of Eicher*, 2003 S.D. 40, ¶ 47, 661 N.W.2d at 369 (internal citation omitted).

[¶29.]     During his appearance before the Board, Frauenshuh stated that he was considering self-imposing a "no more trial[]" restriction. He also told the Board he was considering resigning from the practice of law. Ultimately, though,

Frauenshuh argued that a three-month suspension was excessive and, given his age, tantamount to ending his legal career.

[¶30.] The Referee disagreed: "Frauenshuh also contends that the recommendation that his law license be suspended for three-months is too harsh. The three Minnesota disciplinary actions that he has no recollection of is evidence that admonitions had no effect on Frauenshuh. Because multiple admonitions and even a public reprimand did not have a sufficient effect of putting up the ethical guardrails to insure ethical behavior, a suspension from the practice of law is the next step."

[¶31.] During Frauenshuh's appearance before this Court, his attorney argued that the recommended discipline was particularly harsh and that the Board and Referee relied on his disciplinary history in Minnesota without properly contextualizing the underlying behaviors. Frauenshuh also personally addressed the Court, acknowledging his prior Minnesota violations. Frauenshuh detailed the affirmative steps he had taken to change his behavior after those violations. He also discussed his later PTSD diagnosis and how he had worked to improve his symptom management to address his misconduct.

[¶32.] We have previously acknowledged that "multiple offenses" and "substantial experience in the practice of law" are aggravating factors, while "remoteness of prior offenses" is a mitigating factor. *In re Discipline of Claggett*, 1996 S.D. 21, ¶ 16, 544 N.W.2d 878, 881 (citing but not adopting ABA Standards). Frauenshuh's efforts to address his prior unprofessional conduct and the twenty-year period with no violations are mitigating, but his violations demonstrate a

pattern of unprofessional conduct during his practice that is not erased by the lengthy absence of any reported unprofessional conduct. Over the course of eleven years, Frauenshuh engaged in six separate instances of unprofessional conduct in Minnesota, all of which resulted in discipline. At least one of Frauenshuh's prior admonitions involved similar conduct of failing to follow a clear court order. *See In re Discipline of Ortner*, 2005 S.D. 83, ¶ 47, 699 N.W.2d 865, 879 (suspending attorney who "did exactly what the trial court refused to approve after [he] previously called the proposed [course of action] to the court's attention"). This prior pattern of unprofessional conduct is on balance aggravating to the conduct at issue.

[¶33.] Turning to the misconduct at hand, given Frauenshuh's extensive trial experience, his claim that he misunderstood the court's rulings rings hollow. The pretrial evidentiary orders of the court were clear. Frauenshuh's repetitive violations of these orders demonstrate a calculated and willful indifference toward the court and its rulings. Frauenshuh failed, particularly in the first trial, to meet his responsibility as an officer of the court and uphold its integrity.

[¶34.] The first trial went on for three days before the jury had to be dismissed. Frauenshuh acknowledged before the Referee that his actions cost the alleged victim time and money, but he fails to acknowledge the impact on our system of justice of his repeated refusals to comply with clear court orders, the eventual mistrial, and further delay resulting from his actions. *See In re Discipline of Tornow*, 2013 S.D. 61, ¶ 42, 835 N.W.2d 912, 923 (quoting *In re Discipline of*

*Mines*, 523 N.W.2d 424, 427 (S.D. 1994)) ("A practitioner of the legal profession does not have the liberty to flirt with the idea that the end justifies the means[.]").

[¶35.]     Frauenshuh's unprofessional misconduct in the criminal proceedings and his prior misconduct in Minnesota are also exacerbated by his failure to take responsibility for his actions. Before the Referee, and more so before the Board, Frauenshuh was unapologetic for his actions.[4] Frauenshuh also failed to apologize or express remorse to Judge Rasmussen for his conduct. Frauenshuh all but told the Board that he did not need to follow Judge Rasmussen's rulings because he did not believe they were correct. He also claimed he did not seek clarification from Judge Rasmussen because he perceived that she was "terse" with him when he asked a prior question. Frauenshuh's insistence before the Referee that there was ambiguity in the clear court order and his suggestion that it was Judge Rasmussen's fault he did not seek clarification raise serious concerns about his willingness to comply with court orders going forward.

[¶36.]     In his statement to this Court, Frauenshuh started with an apology, but then shifted blame to his "difficult client." Contrary to Frauenshuh's apparent belief, it was *his* responsibility to follow the court's order and advise his client that she could appeal a ruling with which she disagreed. Frauenshuh's suggestion that his client instructed him to defy a court order provides no justification for his conduct. The "blaming others mentality has been repeatedly rejected by this Court as an acceptable justification for unprofessional misconduct." *In re Discipline of*

---

4.     Counsel for the Board correctly observed that Frauenshuh's demeanor changed between his appearance before the Board, where he was particularly unapologetic, and his appearance, with counsel, before the Referee.

*Laprath*, 2003 S.D. 114, ¶ 84, 670 N.W.2d 41, 65–66. When an attorney who violated the Rules of Professional Conduct was "unrepentant[,]" we held that this "attitude merits our 'serious consideration' in determining an appropriate discipline to protect the public." *Id.* ¶ 85, 670 N.W.2d at 66 (quoting *In re Discipline of Dorothy*, 2000 S.D. 23, ¶ 41, 605 N.W.2d 493, 505); *see also In re Discipline of Tornow*, 2013 S.D. 61, ¶ 65, 835 N.W.2d at 928 ("The public is not protected from future misconduct by the unrepentant.").

[¶37.]     Counsel for Frauenshuh identified mitigating factors in considering the appropriate discipline for the unprofessional conduct. In particular, he asked that we consider that any misconduct was not toward Frauenshuh's client and that he obtained a favorable result for her without charge in the second trial. Frauenshuh may have done right by his client by not charging for the second trial, but Frauenshuh's unwillingness to take responsibility for his actions and his prior conduct support the imposition of a period of suspension. *See In re Discipline of Swier*, 2020 S.D. 7, ¶ 83, 939 N.W.2d at 873 (imposing suspension because of concerns that the solemnity of the disciplinary process and the public censure the Board recommended would be inadequate to "effect the lasting change necessary to protect the public" where attorney tried to defend actions instead of taking full responsibility).

[¶38.]     The Court hereby suspends Frauenshuh's license to practice law in South Dakota for a period of thirty days. Frauenshuh shall be responsible to reimburse costs and expenses to the State Bar of South Dakota for these proceedings and to the Unified Judicial System for the cost and expenses of the

Referee pursuant to SDCL 16-19-70.4.  Frauenshuh shall reimburse these costs and expenses prior to his reinstatement.

[¶39.]　　　　KERN, SALTER, DEVANEY, and MYREN, Justices, concur.