1996 SD 21

**In the Matter of The Discipline of David L. CLAGGETT, as an Attorney At Law.**

No. 18894.

Supreme Court of South Dakota.

Argued Sept. 12, 1995.

Reassigned Feb. 8, 1996.

Decided March 6, 1996.

Laurence J. Zastrow, Pierre, for Disciplinary Board.

Rick A. Cain, Mobridge, for respondent Claggett.

MILLER, Chief Justice (on reassignment).

[¶ 1] The South Dakota State Bar initiated formal attorney disciplinary proceedings resulting in a recommendation from the Disciplinary Board for a public censure. After a hearing, the Referee (Circuit Judge Jack Von Wald) recommended a private reprimand. Although we adopt his findings, we respectfully reject the Referee's recommendation and determine the appropriate disciplinary action to be public censure.

### FACTS

[¶ 2] David L. Claggett graduated from the University of South Dakota Law School in 1981 and was admitted to the practice of law in this state on January 4, 1982. He commenced practice as an associate with a law firm in Brookings. Subsequently, he moved to Spearfish, where he is presently practicing law as a sole practitioner.

[¶ 3] Claggett's mother-in-law, Virginia Foster, was injured in a serious bike accident on July 5, 1988, and it became necessary for

a guardian to be appointed to handle her affairs. Claggett's wife, JoAnn, petitioned and was appointed guardian of Virginia Foster on August 12, 1988. JoAnn posted a $100,000.00 guardian's bond purchased from Western Surety Company. Claggett at all material times acted as guardianship attorney.

[¶ 4] The family of Virginia Foster agreed any family member could borrow money from the guardianship estate.[1] Repayment of any loans was to be evidenced by written promissory notes. No accounting was filed for the guardianship in 1989. An accounting was filed on July 30, 1990, but it did not set forth the beginning balance, receipts, expenditures, or investments chronologically, or an ending balance. The accounting did not show loans made to Claggett[2] and JoAnn.[3]

[¶ 5] Claggett asserts his employees typed the 1990 accounting and he merely failed to review the accounting before it was filed.[4] No subsequent accountings were filed by the guardianship for the years 1991, 1992, and part of 1993, prior to Virginia Foster's death.

[¶ 6] Claggett had executed promissory notes for his loans and repaid them with interest before Virginia Foster's death. Claggett did not withdraw as attorney from the guardianship, file a closing inventory upon the death of Virginia Foster, nor did he notify the Court within a reasonable time after he discovered JoAnn's loans exceeded her capacity to repay them.

[¶ 7] Neither Claggett nor his law firm received any benefits from JoAnn's loans to herself.[5] Claggett and JoAnn maintained their finances separately. She used the loans for clothing, cash advances, and other personal expenses. She has since received counseling for compulsive spending. Claggett acknowledged at the hearing he did not

---

1. Affidavit of Dr. James Hess stated:

   Upon Virginia Foster's injury, I was called upon to counsel the family. At a counseling session with JoAnn Claggett, Bill Foster and Bob Foster. Bill, Bob, and JoAnn discussed continuing Virginia's practice of lending money to family members at a reasonable rate of interest. They agreed that any family members could borrow from the estate; however, they were expected to repay the loans, with interest, and the estate would require written promissory notes.

2. During the period of the guardianship, *and earlier,* Claggett borrowed the following amounts of money for his business and personal use on the following dates:

   | | |
   |---|---|
   | July 28, 1988 | $ 1,500.00 |
   | October 25, 1988 | $ 1,200.00 |
   | May 5, 1989 | $ 2,000.00 |
   | October 9, 1990 | $ 3,000.00 |
   | May 13, 1991 | $ 4,000.00 |
   | June 17, 1991 | $10,000.00 |
   | July 10, 1991 | $ 2,400.00 |
   | TOTAL | $24,100.00 |

3. The *exact amount of the loans to JoAnn was* not indicated in the record. However, an $85,000.00 settlement was paid to the estate of Virginia Foster, by Western Surety Company, and JoAnn relinquished all of her rights in said estate. Western Surety and JoAnn negotiated a $50,000.00 settlement of the amount paid under the bond. As an accommodation to this settlement, Claggett agreed to sign a guaranty for repayment of the $50,000.00. The additional $35,000.00 will be forgiven by Western Surety if the $50,000.00 obligation is timely paid.

4. The Board disputes this fact due to JoAnn's testimony at the March 3, 1995, hearing:

   Question: And who helped you do it or did you do it by yourself? How was it done?
   Answer: We sat down—Dave and I sat down and did it together, and then we took the initial accounting, the initial one, and then figured out what else that we needed to do.

   However, JoAnn's testimony is unclear whether she is referring to the initial accounting or whether she is referencing the accounting filed on July 30, 1990. Claggett testified that he did not have anything to do with the filing of the accounting on July 30, 1990. We will defer to the Referee's finding in this matter and find that Claggett did not review the accounting before it was filed.

5. The Board, by letter dated March 15, 1994, asked the following question of Claggett:

   "In addition, I would like to confirm in writing whether you or your law office received any benefits directly or indirectly from your wife's diversion of funds."

   Claggett's response to the Board failed to mention any of the multiple loans made by JoAnn to Claggett. However, Claggett believed the Board was aware of Western Surety Company's investigation and findings, as Western Surety Company had settled with the Virginia Foster Estate in December of 1993, for $85,000. Claggett believed the Board's inquiry pertained to funds JoAnn took from the guardianship and whether or not he benefited directly or indirectly from those loans.

act competently in representing the guardianship estate.

[¶ 8] With this background, we turn now to a determination of an appropriate discipline.

## DECISION

[¶ 9] The Disciplinary Board and the Referee conducted hearings and made findings, conclusions, and recommendations that Claggett's conduct should be disciplined. We give careful consideration to their findings as they have had the advantage of seeing and hearing the witnesses. *In re Discipline of Jeffries*, 500 N.W.2d 220, 225 (S.D. 1993). However, we give no particular deference to a Referee's recommended sanction. *In re Discipline of Dana*, 415 N.W.2d 818, 822 (S.D.1987). Therefore, although we may adopt the findings of a referee, it does not necessarily follow that we will also adopt the recommendations. *Dana*, 415 N.W.2d at 822 (citing *In re Discipline of Rensch*, 333 N.W.2d 713, 714 (S.D.1983)). "The ultimate decision for discipline of members of the State Bar rests with this Court." *Jeffries*, 500 N.W.2d at 225 (quoting *In re Discipline of Stanton*, 446 N.W.2d 33, 42 (S.D.1989); *Dana*, 415 N.W.2d at 822).

[¶ 10] Members of the South Dakota Bar are governed by the South Dakota Rules of Professional Conduct. SDCL ch. 16–18 App. The Disciplinary Board contends Claggett violated the South Dakota Rules of Professional Conduct, specifically Rules 1.1 and 1.3,[6] in handling the Guardianship of Virginia Foster.

[¶ 11] Claggett has stipulated to his failure to exercise reasonable diligence and promptness in monitoring the guardianship estate and in his representation as the attorney for the guardian of Virginia Foster. As we have often stated, disciplinary proceedings are not conducted to punish an attorney. *Jeffries*, 500 N.W.2d at 222; *In re Discipline of Simpson*, 467 N.W.2d 921, 922 (S.D.1991); *In re Discipline of Hendrickson*, 456 N.W.2d

140, 141 (S.D.1990); *In re Discipline of Walker*, 254 N.W.2d 452, 455 (S.D.1977). Rather, the purpose of a disciplinary proceeding is to protect the public from further attorney misconduct. *Jeffries*, 500 N.W.2d at 222; *In re Discipline of Kirby*, 336 N.W.2d 378, 380 (S.D.1983).

[¶ 12] In determining the appropriate sanction, we must review the totality of the attorney/client relationship to determine if any mitigating factors warrant consideration. *Matter of Discipline of Bihlmeyer*, 515 N.W.2d 236, 239 (S.D.1994).

[¶ 13] While Claggett's conduct is in no way condoned by this Court, there are a number of mitigating factors which suggest the public will be protected from future wrongdoing: (1) he has no pattern of misconduct and no prior incidents of alleged misconduct; (2) he intends to refrain from handling guardianships in the future; (3) he changed his office practice to more closely monitor similar problems in the future; (4) the misconduct arose out of a unique family relationship, hopefully reducing the likelihood of a repeat occurrence; (5) Claggett notified the bonding company regarding JoAnn's misconduct and cooperated with them in reaching a settlement, including a personal guarantee of the settlement amount; (6) he has acknowledged his misconduct and appears repentant; (7) he has now obtained legal malpractice insurance to protect his clients; and (8) he fully cooperated with the Disciplinary Board and Referee during the investigation of the proceedings.

[¶ 14] We have considered several factors in deciding appropriate discipline, including: "whether the conduct involved dishonesty, deceit, fraud, or misrepresentation; whether the conduct is prejudicial to the administration of justice; whether the conduct adversely reflects upon the attorney's integrity, competency or fitness to practice law; the seriousness of the misconduct by the attorney; and the likelihood of repeated instances

---

**6.** Rule 1.1, entitled Competence, states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." SDCL ch. 16–18 App. Rule 1.1.

Rule 1.3 entitled, Diligence, states: "A lawyer shall act with reasonable diligence and promptness in representing a client." SDCL ch. 16–18 App. Rule 1.3.

of similar misconduct." *Jeffries,* 500 N.W.2d at 223 (citations omitted).

[¶ 15] Claggett's conduct was foolish and negligent but not fraudulent or dishonest. While his failure to ensure the proper accounting of the guardianship was prejudicial to the administration of justice, his subsequent conduct of cooperating with the bonding company and negotiating a settlement reflects an effort to remedy the situation. Additionally, his competency to practice law is bolstered by his otherwise clean disciplinary record and his change of office practices.

[¶ 16] Furthermore, while not dispositive of the case before us, we may look to the ABA Standards for Imposing Lawyer Sanctions for some guidance.[7] "After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose." ABA Standards Rule 9.1. Aggravating factors, suggested by the guidelines, include (a) prior disciplinary offenses, (b) dishonest or selfish motive, (c) a pattern of misconduct, (d) multiple offenses, (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process, (g) refusal to acknowledge wrongful nature of conduct, (h) vulnerability of victim, (i) substantial experience in the practice of law, and (j) indifference to making restitution. ABA Standards Rule 9.22. Mitigating factors include (a) absence of a prior disciplinary record, (b) absence of a dishonest or selfish motive, (c) personal or emotional problems, (d) timely good faith effort to make restitution or to rectify consequences of misconduct, (e) full

and free disclosure to Disciplinary Board or cooperative attitude toward proceedings, (f) inexperience in the practice of law, (g) character or reputation, (h) physical or mental disability or impairment, (i) delay in disciplinary proceedings, (j) interim rehabilitation, (k) imposition of other penalties or sanctions, (*l*) remorse, and (m) remoteness of prior offenses. ABA Standards Rule 9.32.

[¶ 17] Considering all of the applicable factors, we conclude that a severe sanction is not appropriate in this matter. Rather, we agree with the Board's recommendation that public censure is the appropriate discipline to be imposed upon Claggett. We also note that although he deserves this censure, we believe him a fit and proper person to practice law.[8]

[¶ 18] Therefore, pursuant to SDCL 16-19-35(4), a judgment of public censure will be entered. Additionally, Claggett is to be taxed with all necessary costs incurred in this matter by the Unified Judicial System and the Disciplinary Board of the State Bar. Lastly, on an annual basis, Claggett is required to provide to the Disciplinary Board proof of legal malpractice insurance or other appropriate security to protect his clients.

[¶ 19] SABERS, AMUNDSON, and GILBERTSON, JJ., concur.

[¶ 20] KONENKAMP, J., deeming himself disqualified, did not participate in this decision.

---

7. "The Standards constitute a model, setting forth a comprehensive system for determining sanctions, permitting flexibility and creativity in assigning sanctions in particular cases of lawyer misconduct. They are designed to promote: (1) consideration of all factors relevant to imposing the appropriate level of sanction in an individual case; (2) consideration of the appropriate weight of such factors in light of the stated goals of lawyer discipline; and (3) consistency in the imposition of disciplinary sanctions for the same or similar offenses within and among jurisdictions." ABA Standards for Imposing Lawyer Sanctions, Rule 1.3 (1986). An argument has been made that this Court should adopt the ABA

Standards. *See,* Sarah A. Hirsch, note, *The Illusive Consistency: A Case for Adopting the ABA Standards for Imposing Lawyer Sanctions in In Re Martin,* 40 SDLRev 300 (1995). We will leave that issue for another day.

8. *For other cases where we determined public censure was the appropriate sanction, see In re Discipline of Taylor,* 498 N.W.2d 200 (S.D.1993); *In re Discipline of Schmidt,* 491 N.W.2d 754 (S.D. 1992); *Dana,* 415 N.W.2d 818; *Kirby,* 336 N.W.2d 378; *In re Discipline of Theodosen,* 303 N.W.2d 104 (1981); and *In re Discipline of Lacey,* 283 N.W.2d 250 (S.D.1979).