KONENKAMP, Justice
(concurring specially).
[¶ 69.] I fully concur with the Court’s conclusions on Tornow’s ethical violations and his equivocal acknowledgment of responsibility. I also concur with the discipline the Court imposes. I write to advocate for a consistent and uniform system for applying disciplinary measures in harmony with our often-stated goals of (1) protecting the public, (2) deterring like conduct by other attorneys, and (3) maintaining professional ethics. See In re Discipline of Mattson, 2002 S.D. 112, ¶ 39, 651 N.W.2d 278, 286. Such a system already exists: the ABA Standards for Imposing Lawyer Sanctions. Other states use the ABA Standards or have adapted them to their particular needs. We have often referred to these Standards in our previous disciplinary cases but have not endorsed them for consistent use.[4] See, e.g., In re Discipline of Light, 2000 S.D. 100, ¶ 13, 615 N.W.2d 164, 168 (citing ABA Standards for Imposing Lawyer Sanctions); In re Discipline of Claggett, 1996 S.D. 21, ¶ 16, 544 N.W.2d 878, 881 (same).
[¶ 70.] Our constitution requires us to oversee the admission and discipline of lawyers. S.D. Const, art. V, § 12. As part of this duty, we should impose discipline evenhandedly and consistently. Otherwise, we “east doubt on the efficiency and the basic fairness of all disciplinary *929 systems.” See ABA Standards for Imposing Lawyer Sanctions, Preface (1991) (in Westlaw as ABA-SILS Preface). If sanctions are too lenient, future conduct will not be deterred, and the public will lose confidence in our legal system. If sanctions are too severe, lawyers might be reluctant to report misconduct, again causing lower public confidence in our system. See id.
[¶ 71.] To achieve the degree of consistency necessary for fairness to the public and the bar, along with reliability and trust in our disciplinary process, the ABA Standards for Imposing Lawyer Sanctions should be used regularly as discretionary guidelines.[5] At the very least, the Standards provide a helpful listing of essential considerations. They will aid referees appointed to adjudicate and recommend discipline to this Court. And, if they are not already being used, the Standards will assist our Disciplinary Board with its functions, including private disciplinary actions, which never come before this Court.[6] Furthermore, as an increasing number of lawyers practice in multiple states, these Standards allow for consistency in imposing disciplinary sanctions for the same or similar offenses within and among jurisdictions.
[¶ 72.] When imposing sanctions for misconduct, the Standards begin by asking the following questions:
(1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?)
(2) What was the lawyer’s mental state? (Did the lawyer act intentionally, knowingly, or negligently?)
(3)What was the extent of the actual or potential injury caused by the lawyer’s misconduct? (Was there a serious or potentially serious injury?)[J
ABA-SILS Framework; see also Light, 2000 S.D. 100, ¶ 13, 615 N.W.2d at 168.
[¶ 73.] We ordinarily start with the notion that the most important ethical duties are those owed to the client, which are the duties of loyalty, diligence, competence, and candor. But a lawyer also owes a duty to the general public and the legal system to abide by the rules in the administration of justice. And a lawyer owes a duty to the legal profession, related to fees, the practice, and the integrity of the profession. See ABA-SILS Framework.
[¶ 74.] In assessing the lawyer’s mental state, the Standards focus on culpability. What was the lawyer’s conscious objective or purpose in accomplishing a particular result? The most culpable state is acting with intent, next with knowledge, and lastly, and least culpable, with negligence. Id.
[¶ 75.] When assessing the extent of injury, “injury” is defined as “harm to a client, the public, the legal system, or the profession” from the lawyer’s misconduct. ABA-SILS Definitions. Injury is measured in reference to the specific duty violated and examined against the extent of actual or potential harm. There can be serious injury, injury, or little to no injury. Id.
[¶ 76.] After answering the first three questions, the Standards then move to any aggravating or mitigating circumstances in guiding which sanction to impose. These circumstances relate, not to the offense at issue, but to matters relevant to fitness to *930 practice law or to matters arising during the disciplinary proceedings. ABA-SILS Standard 9.1. Aggravating factors include: “(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge the wrongful nature of the conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; and (k) illegal conduct, including that involving the use of controlled substances.” ABA-SILS Standard 9.2.
[¶ 77.] Mitigating factors include: “(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent’s recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; (m) remoteness of prior offenses.” ABA-SILS Standard 9.3.
[¶ 78.] Using the ABA Standards for Imposing Lawyer Sanctions as a framework can forestall the hazard of merely subjective discipline. As another court noted, “[o]ur review is often hampered by the absence of a clear explanation of the reasons for selecting a particular sanction. Reference to the ABA Standards will lead to well-reasoned decisions that will facilitate meaningful review.” Grievance Adm’r v. Lopatin, 462 Mich. 235, 612 N.W.2d 120, 128 (2000). Of course, the Standards will not answer every question that may arise in a disciplinary proceeding, but their regular use as guidelines can add a greater measure of uniformity and consistency to South Dakota’s vital interest in maintaining the highest ethical standards for its lawyers.

. See William A. Williams, The Whole is Greater Than the Sum of the Parts: The Discipline of Benjamin J. Eieher, Attorney at Law, 49 S.D. L. Rev. 373, 395 n. 182 (2004) (noting that although in certain cases we have used the Standards for guidance, we have "not adopted or implemented” them).

. See Sarah A. Kirsch, The Illusive Consistency: A Case for Adopting the ABA Standards for Imposing Lawyer Sanctions in In re Martin, 40 S.D. L. Rev. 300 (1995).

. Disciplinary boards in some states use the ABA Standards even when the courts do not. Levin, The Emperor’s Clothes and Other Tales About the Standards for Imposing Lawyer Discipline Sanctions, 48 Am. U. L. Rev. 1, 34, n. 157 (1998).